**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| ARTIS WHITEHEAD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:24-CV-02991 |
| | ) | JURY DEMAND |
| CITY OF MEMPHIS, JAMES HOWELL, | ) | |
| TERRY LYONS, ROBERT RAGLAND, | ) | |
| JOSEPH PEARLMAN, VIVIAN MURRAY, | ) | |
| THOMAS WARRICK, TIMOTHY GREEN, | ) | |
| EDWARD BASS, ROBERT HULL, JR., | ) | |
| JAMES BOLDEN, and UNKNOWN | ) | |
| EMPLOYEES OF THE CITY OF MEMPHIS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT CITY OF MEMPHIS' MOTION**
**TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendant the City of Memphis ("the City") submits this Memorandum in Support of its Motion to Dismiss Plaintiff Artis Whitehead's ("Plaintiff") Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. For the purpose of the Motion to Dismiss, the Court must assume the facts as pled by the Plaintiff are true, as that is the standard for the Court to analyze a motion to dismiss; however, the City unequivocally denies that the facts as alleged in the Complaint against the City are accurate. In support of its Motion, the City states as follows:

## I.      **<u>INTRODUCTION</u>**

This case arises from a 2002 robbery in Memphis' entertainment district for which Plaintiff claims he was wrongfully convicted. Plaintiff utterly fails to link his wrongful conviction and subsequent exoneration to any policy or custom of the City.

Along with the City, Plaintiff also brings this action against current and former Memphis Police Department ("MPD") officers and Chiefs: James Howell, Terry Lyons, Robert Ragland, Joseph Pearlman, Vivian Murray, Thomas Warrick, Timothy Green, Edward Bass, Robert Hull, Jr., James Bolden, and Unknown Employees of the City of Memphis (collectively, "Defendant Officers"). Plaintiff asserts claims of Fabrication of False Evidence in Violation of Due Process, Suppression and Withholding of Exculpatory Evidence in Violation of Due Process, Unlawful Arrest, Malicious Prosecution under federal and state law, Failure to Intervene, Conspiracy to Deprive Constitutional Rights, Policy and Practice Claim Against the City of Memphis, Supervisory Liability, Intentional Infliction of Emotional Distress, Civil Conspiracy, Respondeat Superior, and Indemnification.[1]

---

[1] Although it is not entirely clear, the only claims that appear to be lodged directly against the City are Count VII (Policy and Practice Claim), Count XII (Respondeat Superior), and Count XIII (Indemnification). The City reserves the right to raise new arguments in its reply brief should it become apparent that there are other claims asserted against the City.

The Complaint contains factual allegations related to police officer misconduct, but Plaintiff does not adequately link any of these allegations to the City. Instead, Plaintiff alleges sporadic allegations against the City in an attempt to illustrate a pervasive and persistent policy or custom of Memphis Police Department officers fabricating evidence and manipulating witness identifications to secure wrongful convictions. This claim, however, is not sufficiently supported as the allegations in the Complaint fall far short of meeting the standard set forth in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Outside of overly broad and conclusory allegations, Plaintiff fails to allege sufficient facts to sustain its 42 U.S.C. § 1983 claim against the City under *Monell*. Plaintiff also impermissibly asserts collective allegations against all of the Defendants.

Additionally, Plaintiff's state law respondeat superior and indemnification claims fail as a matter of law. A municipality cannot be held liable under the common law theory of respondeat superior, and the City is also immune from this claim under the Tennessee Governmental Tort Liability Act. Likewise, Plaintiff's indemnification claim fails because a plaintiff is not entitled to indemnification for claims arising out of willful misconduct. For the reasons articulated herein, this Court should dismiss Plaintiff's Complaint against the City for failure to state a claim.

## II.   FACTUAL ALLEGATIONS

Plaintiff alleges that he was "wrongfully convicted and spent nearly two decades in prison for a 2002 robbery at the B.B. King's Blues Club on Beale Street in Memphis, Tennessee." (Compl., ECF No. 1, ¶ 1.) Plaintiff was sentenced to 249 years in prison. (*Id.*, ¶ 16.) Plaintiff claims that his wrongful conviction was based "almost entirely on Defendants' fabrication and suppression of evidence" and that there was "no legitimate evidence connecting Mr. Whitehead to the crime." (*Id.*, ¶¶ 2, 3.)

In support of these claims, Plaintiff alleges that Defendant Officers Howell and Ragland fabricated evidence and manufactured a false anonymous tip to implicate Plaintiff as the robber. (*Id.*, ¶ 4.) Plaintiff claims that Defendant Officers "coerced a man detained for two other armed robberies to phone in a fake tip to the Memphis Crimestoppers tip line falsely implicating [Plaintiff] in the robbery. They used this false tip, which they themselves engineered, as justification for their investigation into [Plaintiff]." (*Id.*, ¶ 5.) Plaintiff alleges that "Defendant Officers hid the identity of the armed robber and the true circumstances of the false Crimestoppers call they engineered" and that Defendant Officers "neither disclosed that the armed robber sought a reduced sentence nor that they paid him for fabricating an identification of Mr. Whitehead as the Beale Street robber." (*Id.*, ¶ 6.) Plaintiff further claims that Defendant Officers "suppressed information that this armed robber was experienced at falsely implicating people in crimes they did not commit" and that he "had previously falsely implicated other people in robberies for which they were innocent, and for which he was the true perpetrator." (*Id.*)

Plaintiff alleges that Defendant Officers also fabricated false eyewitness identifications of Plaintiff and that "[t]hese identifications were purportedly obtained from victims of the robbery, who—before these Defendant Officers conspired to frame [Plaintiff]—had described the suspect as at least 7 inches shorter and 50 pounds lighter than [Plaintiff]." (*Id.*, ¶ 7.) Plaintiff asserts that "Defendant Officers used these witnesses to fabricate identifications against Mr. Whitehead, in order to legitimize the already-fabricated identification of Mr. Whitehead by the Defendant Officers' fake tip." (*Id.*, ¶ 9.) "Defendant Officers suppressed the tactics they used both to coerce the detained, armed robber into falsely implicating Mr. Whitehead, and to fabricate the witness identifications." (*Id.*, ¶ 10.) Plaintiff contends that "[b]ased on the force of the fabricated

evidence and the suppression of all exculpatory evidence, [Plaintiff] was charged, prosecuted, and wrongly convicted of robbery, kidnapping, and assault." (*Id.*, ¶ 11.)

To implicate the City, Plaintiff alleges "Defendant Officers' actions were part of a pattern and practice of systemic police misconduct at the Memphis Police Department, where police officers fabricated evidence, including false identifications, through tactics such as fact-feeding, suggestive identification procedures, payments, and promises of leniency." (*Id.*, ¶ 13.) Plaintiff alleges that "he discovered that the Defendant Officers had framed him" and that "[h]e was finally vindicated when the Shelby County Criminal Court considered the 'scant evidence' the State had against him." (*Id.*, ¶ 17.) Plaintiff alleges that the Shelby County Criminal Court "found that the Memphis Police Department 'intentionally hid the identity' of the detained, armed robber and 'suppressed this information because they knew that there were problems' with him as the witness." (*Id.*) Plaintiff also alleges that the Shelby County Criminal Court "recognized that Mr. Whitehead had been improperly tried because the jury 'assum[ed] that law enforcement conducted a legitimate investigation'" (*Id.*, ¶ 18) (alterations in original). Plaintiff alleges that on December 15, 2023, the Shelby County Criminal Court vacated Plaintiff's conviction. (*Id.*, ¶ 19.)

Plaintiff also alleges that "[t]he misconduct by the Defendant Officers […] was undertaken pursuant to the policies and practices of the Memphis Police Department" and that Plaintiff's injuries were proximately caused by "policies and practices on the part of the Memphis Police Department to pursue and secure false convictions through profoundly flawed investigations and unconstitutional methods and tactics." (*Id.*, ¶¶ 99, 100.) Plaintiff also alleges that "[t]he City's failure to train, supervise, and discipline its officers […] condones, ratifies, and sanctions the kind of misconduct that the Defendants committed against [Plaintiff] in this case."

(*Id.*, ¶ 132.) Plaintiff asserts that "[w]ithout any physical evidence to tie Mr. Whitehead to the Beale Street robbery, prosecutors had to rely on the Defendant Officers' fabrication of false evidence and suppression of exculpatory evidence to convict Mr. Whitehead." (*Id.*, ¶ 136.) Plaintiff contends that he spent "nearly 21 years incarcerated for something he did not do" and that he was detained in harsh and dangerous conditions in maximum security prisons. (*Id.*, ¶¶ 143, 146.)

Accordingly, Plaintiff brings a "Policy and Practice Claim Against the City of Memphis." Plaintiff asserts that his resulting injuries "were caused by the policies, practices, and customs of the [MPD], in that employees and agents of the [MPD] regularly fabricated false evidence implicating criminal defendants in criminal conduct, such as by using the improper tactics described above to fabricate false witness statements; failed to disclose exculpatory evidence to criminal defendants; [and] pursued wrongful convictions through profoundly flawed investigations[.]" (*Id.*, ¶ 300.) Plaintiff alleges that these alleged widespread practices and customs constituted a "de facto policy" of the MPD and that municipal policy makers, including former Chiefs Robert Hull, Jr. and James Bolden, tolerated or acquiesced to the problem. (*Id.*, ¶ 301.) Plaintiff further alleges that "[MPD] declined to implement sufficient training or any legitimate mechanism for oversight or punishment of officers and agents who fabricated false evidence and witness testimony, withheld material evidence, and pursued wrongful convictions." (*Id.*, ¶ 302.)

## I.     LAW AND ARGUMENT
### A.  Legal Standard for Motions to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678. While a complaint need not present detailed factual allegations, to be cognizable it must provide more than "labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545 (emphasis added). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing authorities). In other words, "claims set forth in a complaint must be plausible, rather than conceivable." *Id.* at 570.

A complaint must have a factual foundation, and the mere possibility "that a plaintiff might later establish some set of undisclosed facts to support recovery" is insufficient to survive a 12(b)(6) challenge. *Twombly*, 550 U.S. at 561 (internal quotation marks omitted). If the plaintiff does not "nudge his claims across the line from conceivable to plausible, his complaint must be dismissed." *Id.*

The *Twombly* plausibility standard consists of a "two-pronged approach." *Iqbal*, 556 U.S. at 679. Under the first prong, the Court identifies allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* The second prong requires that "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"In the context of [§] 1983 municipal liability, district courts in the Sixth Circuit Court of Appeals have interpreted *Iqbal*'s standards strictly." *See, e.g.*, *Epperson v. City of Humboldt, Tenn.*, 140 F. Supp. 3d 676, 685 (W. D. Tenn. 2015) (quoting *Hutchison v. Metro. Gov't of Nashville & Davidson Cty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010)).

## B. The Complaint Fails to Provide the City with Fair Notice of What Claims are being Asserted Against It.

Counts I through VI must be dismissed as they reflect improper generalized pleading that refer to all Defendants generally and categorically. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012). In Counts I through VI, Plaintiff brings claims for Fabrication of False Evidence in Violation of Due Process, Suppression and Withholding of Exculpatory Evidence in Violation of Due Process, Unlawful Arrest, Malicious Prosecution, Failure to Intervene, and Conspiracy to Deprive Constitutional Rights against all Defendants. But to satisfy *Twombly* and *Iqbal*, a plaintiff "must allege, with particularity, facts that demonstrate ***what each defendant did*** to violate the asserted constitutional right," *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (emphasis added) (citation omitted), and may not rely on broad allegations of collective wrongdoing. *See id.*; *Marcilis*, 693 F.3d at 596-97 (citing *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (finding that complaint's collective references to "Defendants" failed to satisfy requirement that plaintiff allege specific facts showing how each defendant violated a constitutional right); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."); *Atuahene v. City of Hartford*, 10 Fed.Appx. 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to

distinguish their conduct, [the plaintiff's] complaint failed to satisfy [the] minimum standard" that "a complaint give each defendant fair notice of what the plaintiffs claim is and the ground upon which it rests." (internal quotation marks omitted)).

Because of Plaintiff's improper group pleading, the City does not have fair notice of Plaintiff's actual claims against it. As a threshold matter, the Defendant Officers are being sued in their individual capacities, not their official capacities. (*See* Compl. ¶¶ 24-25.) In the factual allegation section, (*id.* ¶¶ 27-1340), Plaintiff lumps Defendants together in many instances when describing misconduct. There are a few instances where Plaintiff specifically names individual officers or the City specifically, but these allegations are limited. The fact that there are eleven Defendants named in this action, not even including the "Unknown Employees of the City," further illustrates the improper nature of Plaintiff's pleading. To take another example, in Count I, Plaintiff first does not specify against whom this Count is brought. (*See* Compl., at PageID 28.) Then, Plaintiff refers to "Defendants'" generally but pleads allegations as if he is referring to individual persons. (*See, e.g.*, Compl. ¶ 150 ("[T]he Defendants, acting as investigators and without probable cause to suspect Plaintiff of any crime, individually, jointly, and in conspiracy with one another, and others unknown, **as well as under color of law and within the scope of their employment**, deprived Plaintiff of his constitutional right . . .")) (emphasis added); *but see* Compl. at Count IV (referring to individual defendants as "Defendant Officers").

In each of these six counts, Plaintiff alleges that "[t]he misconduct in this Count by the Defendants was undertaken pursuant to the policy and practice of the Memphis Police Department, in the manner more fully described above and in Count VII." (*See* Compl. ¶¶ 267,

278, 275, 277.)[23] It is not clear if these references are being used to establish a foundation for Count VII or if these references are establishing that these Counts are being brought against the City.

It is well settled that it is redundant and superfluous to sue a municipality and then sue individual officers in their *official capacity*, so Plaintiff's (1) generalized use of "Defendants" and (2) insertion or legal phrases of art like "under color of law and within the scope of their employment" make these allegations entirely improper and indecipherable. *See Foster v. Michigan*, 573 Fed. Appx. 377, 390 (6th Cir. 2014) (noting that when, as here, the entity is a named defendant, official capacity claims against police officers acting as agents of the entity are "redundant" and "superfluous.").

Notwithstanding the fact that the City has a reasonable basis to believe that Counts I through VI are not being brought against the City based on the allegations contained therein, the use of the collective term "Defendants" suggests otherwise. Accordingly, these allegations fail to state a claim upon which relief can be granted because they do not satisfy the standard set forth in *Twombly* and *Iqbal*. Defendants should not be required to speculate what, if any, claims are being asserted against them. The onus is on Plaintiff to adequately plead his claims.

Plaintiff's general allegations and Counts directed towards "Defendants" and his inconsistent use of "Defendants" generally and "Defendant Officers" fail to put each individual defendant on notice of the claims made against them. These allegations are insufficient to sustain a claim against any Defendant, including the City. Accordingly, these claims must be dismissed.

---

[2] The City is citing to the Complaint as it is written, but the City would like to note that the numbering is off in some areas. *See, e.g.*, Compl. at PageID 28-29 (paragraph numbers jump from 151 to 265).
[3] As explained *infra* in Section I.D, Plaintiff's *Monell* claim, Count VII, based on MPD's alleged policy and practices must be dismissed for failure to state a claim.

### C. Plaintiff's Unlawful Arrest Claim is Barred by the Applicable Statute of Limitations.[4]

Count III must be dismissed because it is time barred. "The duration of the statute of limitations for § 1983 actions is governed by state law; however, federal standards govern when the statute begins to run. *Flinn v. Corbitt*, No. 3:07-CV-402, 2008 WL 2388130, at *2 (E.D. Tenn. June 9, 2008) (citing *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003). Tennessee law provides for a one-year statute of limitations for § 1983 actions. *Id.* (citing Tenn. Code Ann. § 28–3–104(a)(3)). "The statute of limitations begins to run at the time the claimant becomes detained pursuant to legal process." *Id.* (citing *Wallace v. Kato*, 127 S.Ct. 1091 (2007)). Accordingly, "a plaintiff must bring his § 1983 unlawful arrest/false imprisonment claims within one year of the accrual of that action." *Id.*

Here, Plaintiff alleges that he was arrested without probable cause and that "in order to procure the warrant for Plaintiff's arrest, Defendant Officers knowingly and deliberately, or with a reckless disregard for the truth, made false statements and/or omissions that created a falsehood." (Compl. ¶¶ 270, 272.) Plaintiff also asserts "[t]he misconduct in this Count by the Defendants was undertaken pursuant to the policy and practice of the Memphis Police Department, in the manner more fully described below in Count VII." (*Id.* ¶ 275.) Plaintiff was convicted in 2003, meaning he was detained pursuant to legal process well over twenty years ago. (*See* Compl. ¶ 101.) Accordingly, the one-year statute of limitations has ran, and Plaintiff's unlawful arrest claim is time-barred.

---

[4] Again, the City is addressing this claim out of an abundance of caution, but it is not clear if this claim is being asserted against the City.

### D. Plaintiff Fails to Plead Sufficient Facts Under *Monell* to Sustain the § 1983 Claim Against the City.

Plaintiff's *Monell* claim, Count VII, against the City should be dismissed because Plaintiff failed to plead sufficient facts to sustain this claim. In Count VII, Plaintiff brings a general "Policy and Practice Claim" against the City under 42 U.S.C. §1983. In *Monell v, Department of Social Security Services of City of New York*, the Supreme Court found that "[l]ocal governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where. . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690, (1978). Essentially, a municipality cannot be held liabile solely because it employs tortfeasors and Congress "did not intend for § 1983 liability to attach where such causation [is] absent." *Id.* To prevail on a claim against a municipality under §1983, a plaintiff must establish both: (1) the deprivation of a constitutional right; and (2) the municipality's responsibility for that violation. *Doe v. Claiborne Cnty., Tenn. By and Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 505–506 (6th Cir. 1996).

It is well-settled that "a municipality cannot be held liable under § 1983 on a respondeat superior basis." *Mhoon v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, No. 3:16-cv-01751, 2016 WL 6250379, at *6 (M.D. Tenn. Oct. 26, 2016) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 432–33 (6th Cir. 2005)). Rather, municipal liability under § 1983 arises "when execution of a government's policy or custom ... inflicts the injury of a constitutional violation." *David v. City of Bellevue, Ohio*, 706 F. App'x 847, 850 (6th Cir. 2017) (quoting *Monell,* 436 U.S. at 694). "[T]he touchstone of 'official policy' is designed '*to distinguish acts of the municipality from acts of employees of the municipality*, and thereby make clear that municipal liability is limited to action for which the municipality is actually

responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479–480 (1986)) (emphasis in original).

The Sixth Circuit recognizes four avenues by which a plaintiff can prove the existence of a municipality's illegal policy or custom: "1) the municipality's legislative enactments or official agency policies; 2) actions taken by officials with final decision-making authority; 3) a policy of inadequate training or supervision; or 4) a custom of tolerance or acquiescence of federal rights violations." *Thomas*, 398 F.3d at 429 (citations omitted).

Here, Plaintiff does not specify under which avenue of *Monell* he is proceeding, but based on the conclusory allegations against the City contained in the Complaint, it appears his claims fall under the following: official policy, custom of tolerance, failure to train, and failure to supervise. (*See, e.g.*, Compl., ¶¶ 132, 301.) Specifically, Plaintiff asserts that his resulting injuries "were caused by the policies, practices, and customs of the [MPD]" and that these alleged widespread practices and customs constituted a "de facto policy" of the MPD and that municipal policy makers, including former Chiefs Robert Hull, Jr. and James Bolden, tolerated or acquiesced to the problem. (*Id.,* ¶¶ 300, 301.) Plaintiff also alleges that "[MPD] declined to implement sufficient training or any legitimate mechanism for oversight or punishment of officers and agents who fabricated false evidence and witness testimony, withheld material evidence, and pursued wrongful convictions." (*Id.,* ¶ 302.)  As explained below, Plaintiff's § 1983 claim against the City fails as a matter of law.

> 1. **Plaintiff fails to state a claim that the City had an unlawful official policy.**

Plaintiff fails to point to an official MPD policy authorizing the conduct alleged, because no official policy could plausibly exist. Plaintiff claims that the City has a policy and practice of wrongly convicting innocent individuals. (*See, e.g.*, Compl. at PageID 16.) Specifically, Plaintiff

asserts "Plaintiff's injuries were caused by the policies, practices, and customs of the Memphis Police Department, in that employees and agents of the Memphis Police Department regularly fabricated false evidence implicating criminal defendants in criminal conduct,[…] failed to disclose exculpatory evidence to criminal defendants[, and] pursued wrongful convictions through profoundly flawed investigations[.]" (*Id.*, ¶ 300.) "[I]n *Monell* and subsequent cases, [the court has] required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citations omitted). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Id.* at 403-404. "To prevail on this theory under *Monell*, Plaintiff must identify 'formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.'" *Sanders v. City of Memphis, Tennessee*, No. 221CV02585MSNCGC, 2022 WL 4665867, at *4 (W.D. Tenn. Sept. 30, 2022) (citation omitted).

Plaintiff "must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404. In other words, "a plaintiff must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation and internal quotation marks omitted).

Here, Plaintiff fails to plausibly identify any specific policy of the City, written or otherwise, that authorized the Defendant Officers to act in the manner alleged in the Complaint. Plaintiff did not point to any "formal rules of understandings" which establish that the City instructed its officers to employ the behavior alleged under these same—or any—circumstances "consistently and over time." *See Sanders*, No. 221CV02585MSNCGC at *4.

Instead, Plaintiff asserts, with no support, that "[Plaintiff] was the victim of, and his injuries were proximately caused by, policies and practices on the part of the Memphis Police Department to pursue and secure false convictions through profoundly flawed investigations and unconstitutional methods and tactics" and "the actions of the Defendant Officers reflect the Memphis Police Department's unwritten custom or policy to withhold exculpatory evidence from criminal defendants." (Compl., ¶¶ 14, 100.) Plaintiff did not point to a specific policy or facts which would show that the City encouraged or authorized any police officer to act in the manner described in the Complaint. (*See, e.g., id.*, ¶¶ 66-73.) This is so because such a policy does not exist. To be sure, outside of conclusory allegations, the Complaint contains **no** factual allegations against Defendants Hull and Bolden, the chief policymakers at the time, at all. (*See id.*, ¶¶ 102, 121, 124, 301) (reflecting the only allegations directed at the former Chiefs).

Simply put, it defies logic to presume that any police department or police chief would implement an official or "de facto" policy of authorizing its officers to fabricate evidence, suppress evidence, and assist with securing the wrongful conviction of innocent individuals. *See, e.g., Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d at 508 ("[Plaintiff] does not claim that the School Board had a custom of affirmatively condoning sexual abuse. **Clearly, no municipality could have such a policy**.") Thus, Plaintiff fails to plausibly identify any official policy of the City that gave rise to the alleged injuries, and Count

VII must be dismissed.

### 2. Plaintiff fails to state a claim for an unlawful custom of tolerance under *Monell*.

Like the official policy allegations, Plaintiff fails to show how the City maintained a custom of permitting officers to fabricate and suppress evidence to secure wrongful convictions. "[A] custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating ***similar claims***." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (emphasis added). A "custom" for purposes of *Monell* liability must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691 (internal quotation marks and citation omitted); *see also Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993), *cert. denied*, 510 U.S. 826 (1993). In turn, the notion of "law" must include "[d]eeply embedded traditional ways of carrying out state policy." *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S. 362, 369 (1940). It must reflect a course of action ***deliberately chosen from among various alternatives***. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985) (emphasis added). In short, a "custom" is a "legal institution" not memorialized by written law. *Feliciano*, 988 F.2d at 655.

Plaintiff fails to show that the act of fabricating and suppressing evidence is a course of action deliberately chosen among various alternatives within the MPD. Plaintiff's allegations against the City are largely conclusory or unrelated to establishing a custom of tolerance for the specific conduct alleged of in the Complaint. General officer misconduct does not equate to a custom of tolerance related to suppressing and fabricating evidence to secure convictions. For example, Plaintiff makes sweeping and conclusory allegations regarding the MPD and its practices:

> 101. At the time of the Memphis Police Department's investigation into the 2002 Beale Street robbery, in the period leading up to Mr. Whitehead's wrongful

16

conviction in 2003, and for a period continuing thereafter, the Memphis Police Department, including some or all of the Defendant Officers in this case, engaged in a systematic pattern of fabrication of evidence, withholding of exculpatory information, and other illegal tactics, the sum total of which completely corrupted the investigative process.

110. Before the investigation at issue here and continuing afterwards, dozens of cases have come to light in which Memphis Police officers were involved in suppressing exculpatory evidence or fabricating false evidence to cause the conviction of an innocent person for serious crimes they did not commit. These cases include many in which Memphis Police officers used the same tactics Defendant Officers employed against Plaintiff in this case, including fabricating evidence, concealing exculpatory evidence, manipulating eyewitness identifications, and using other tactics to secure arrests, prosecutions, and convictions without probable cause and without regard for the targets' actual guilt or innocence.

301. The above-described widespread practices and customs, which were so well-settled as to constitute the de facto policy of the Memphis Police Department, were allowed to exist because municipal policymakers with authority over the same, including but not limited to Chiefs of Police Hull, Jr. and Bolden, either tolerated or acquiesced to the problem, thereby effectively ratifying it. Defendants' tactics were supported by high-ranking supervisors in the Investigations Division, as well as the Robbery Bureau.

(*See* Compl., ¶¶ 101, 110, 301.) To support these sweeping claims, Plaintiff cites to two instances spanning over four decades where MPD officers allegedly "fabricated" evidence—one in 1983 and one in 2002. (*Id.*, ¶¶ 111, 112.) Importantly, Plaintiff does not allege that MPD failed to investigate these incidents or failed to discipline the officers involved. Simply pointing to sporadic conduct that is allegedly similar does not show a custom so widespread and "so permanent and well settled as to constitute a custom or usage with the force of law." *See Monell*, 436 U.S. at 691 (internal quotation marks and citation omitted).

In further support, Plaintiff largely pleads allegations on unrelated incidents. (*See, e.g.*, Compl., ¶ 113-118 (unrelated Department of Justice Investigation and Tyre Nichols incident)). For example, Plaintiff attempts to use the Tyre Nichols incident as support for his claims, but this

is insufficient. It is public knowledge that the officers involved were fired from the MPD almost immediately and tried for their actions before a federal jury *in this Court*.[5] Accordingly, this is yet another example of Plaintiff failing to support its claim that the City and MPD acquiesces misconduct, tolerates misconduct, or fails to investigate misconduct. Again, outside of conclusory allegations, the Complaint contains **no** factual allegations against Defendants Hull and Bolden, the Chiefs of Police at the time, to support a custom of tolerance within the MPD. (*See id.*, ¶¶ 102, 121, 124, 301.)

Plaintiff also makes allegations regarding specific Defendant Officers. For example, Plaintiff alleges that "Defendant Howell was known within the Memphis Police Department at this time as its 'bulldog' because he would 'not let go' of his targeted suspects until he secured an arrest and conviction, no matter the cost" and that Defendant Howell had a disciplinary record and regularly violated suspects civil rights. (Compl., ¶ 103-105.) None of these allegations move the needle or show, for example, that fabricating or suppressing evidence is the custom with the force of law or reflects deeply embedded traditional ways of carrying out policy within the MPD. *See Browning*, 310 U.S. at 369. In one instance, Plaintiff specifically notes that Defendant Howell was suspended from duty for misconduct. (*See* Compl., ¶ 104.) As such, Plaintiff's allegations are insufficient to show a permanent and wide-spread custom of tolerance or a pattern of inadequate investigation into **similar claims**.

---

[5] *See United States of America v. Bean et al.*, Case No. Case 2:23-cr-20191-MSN; *see also* https://www.justice.gov/archives/opa/pr/three-former-memphis-tennessee-police-officers-convicted-federal-felonies-related-death-tyre (last visited February 9, 2025); *see also Greene v. Brown & Williamson Tobacco Corp.*, 72 F. Supp. 2d 882, 890 (W.D. Tenn. 1999) ("Judicial notice of generally known facts is appropriate when deciding a motion to dismiss for failure to state a claim.") (citing Fed. R. Evid. 201(f) ("Judicial notice may be taken at any stage of the proceeding")).

Accordingly, Plaintiff failed to sufficiently plead facts to support a claim for custom of tolerance *Monell* claim against the City.

### 3. Plaintiff fails to sufficiently plead for failure to train.

Plaintiff fails to sufficiently plead that MPD's training program was inadequate. In fact, Plaintiff fails to make any specific allegations regarding the MPD's training program at all other than baldly concluding that the City did not train its officers in enumerated categories and that "[t]he City's failure to train Memphis police officers . . . caused [Plaintiff's] wrongful conviction and his injuries." (*See* Compl., ¶ 131.) Plaintiff's allegations do not give rise to a failure to train claim under *Monell*.

It is well settled that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). To establish municipal liability on this basis, a plaintiff must show "'(1) the training program was inadequate to the task the officer must perform, (2) the inadequacy is a result of the municipality's deliberate indifference, and (3) the inadequacy is closely related to or actually caused the plaintiff's injury.'" *Epperson*, 140 F. Supp. 3d at 684 (citation and quotations omitted). "Deliberate indifference requires a showing of 'prior instances of unconstitutional conduct demonstrating that the municipality has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Id.* (quoting *Bonner–Turner v. City of Ecorse*, 627 Fed. Appx. 400, 414, 2015 WL 5332465, at *13 (6th Cir. 2015)).

Without providing any specific details, Plaintiff baldly concludes that the City failed to train its officers on:

- The conduct of physical lineups, photographic arrays, and other identification procedures.

- Preserving material evidence, such as interviews, physical lineups and photographic arrays used for identification purposes.
- The constitutional requirement to preserve and disclose exculpatory evidence, including how to identify such evidence and what steps to take when exculpatory evidence has been identified in order to ensure that the evidence is made part of the criminal proceeding.
- The need to refrain from psychological abuse, and manipulative and coercive conduct, in relation to suspects and witnesses.
- The risks of wrongful convictions and the steps police officers should take to minimize risks.
- The risks of engaging in tunnel vision during investigations.
- The need for full disclosure, candor, and openness on the part of all officers who participate in the police disciplinary process, both as witnesses and as accused officers, and the need to report misconduct committed by fellow officers.

(Compl., ¶ 131.) A case from this Court is instructive. In *Boddy v. City of Memphis, Tennessee*, the Sixth Circuit rejected similar conclusory allegations. No. 22-5259, 2022 WL 12258977, at *3 (6th Cir. 2022). There, the Court described the complaint as "filled with conclusory assertions that the City does not train or supervise its police officers and sanctions a wide variety of illegal police practices[.]" *Id.* The court concluded that the complaint was "bereft, however, of any factual allegations that could plausibly support these sweeping assertions. [Plaintiff] does not allege a single fact related to the training the City provides its police officers, any prior incidents involving **comparable** [incidents] or anything else that would plausibly suggest that the City maintained a policy or custom that contributed to the alleged deprivations of [Plaintiff's] constitutional rights." *Id.* (emphasis added); *see also Sweat v. Butler*, 90 F. Supp. 3d 773, 782–83 (W.D. Tenn. 2015) (granting motion to dismiss on failure to train allegations where the plaintiff focused on the officer's prior work history, alleged misconduct, and a failure to discipline given that "the allegations [did] not make a failure to train claim plausible because none of them concern[ed] training practices or a lack thereof."). So too here.

Plaintiff also fails to connect how any level of training could prevent officers, as Plaintiff alleges, from intentionally fabricating and suppressing evidence. Plaintiff is not alleging

20

negligent conduct, so it is unclear what training Plaintiff is alleging would have prevented the willful deceit that Plaintiff alleges occurred in securing his conviction. Notwithstanding the fact the purported factual allegations against the Defendant Officers are improperly pled and insufficient, the only plausible inference one can make from these generalized allegations is that MPD officers were acting outside the bounds of their training as MPD officers. For these reasons, Plaintiff failed to sufficiently plead facts to support a failure-to-train claim.

### 4. Plaintiff fails to sufficiently plead a failure to supervise claim.

Plaintiff's failure to supervise allegations fare no better. The legal standards for a claim of inadequate supervision and one of inadequate training are essentially the same. *Okolo v. Metro. Gov. of Nashville*, 892 F. Supp. 2d 931, 943 (M.D. Tenn. 2012). Again, Plaintiff broadly concludes that MPD failed to sufficiently supervise its officers.

To state a municipal liability claim under an "inaction" theory, such as failure to supervise, Plaintiff must establish: (1) the existence of a clear and persistent pattern of misconduct by the MPD officers; (2) notice or constructive notice on the part of the City of that misconduct; (3) the City's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and (4) that the City's custom was the "moving force" or direct causal link in plaintiff's constitutional deprivation. *See Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d at 508. To establish deliberate indifference, Plaintiff "must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the [supervision] in this particular area was deficient and likely to cause injury." *Miller v. Sanilac County*, 606 F.3d 240, 255 (6th Cir. 2010) (citation omitted).

Here, for the failure to supervise claim, Plaintiff offers only conclusory statements that the City failed to properly supervise its officers. (*See, e.g.*, Compl., ¶¶ 15, 132.) Additionally,

Plaintiff cites to a Department of Justice Report and states "[o]n the subject of supervision, the DOJ concluded among other things that "supervisors and commanders have overlooked or try to justify legal violations" and that "supervisors also fail to conduct adequate investigations; instead, they overlook or try to justify violations." *But see Miller*, 606 F.3d at 255 (Plaintiff has to show that the City "ignored a history of abuse and was clearly on notice that the [supervision] *in this particular area* was deficient and likely to cause injury.") (emphasis added). Plaintiff's broad and conclusory allegations that MPD failed to provide supervision do not meet the threshold plausibility standard and should be dismissed.

### E. Plaintiff's State Law Claim of Respondeat Superior Should be Dismissed.

In Count XII, Plaintiff brings a respondeat superior claim against the City that should be dismissed for two reasons. First, Tennessee courts and the United States Supreme Court have recognized that a municipality cannot be held liable under the common law theory of respondeat superior. *Joyner v. Taylor*, 968 S.W.2d 847, 850 (Tenn. Ct. App. 1997) (citing *Monell*, 436 U.S. at 691). "[A] municipality cannot be held liable solely because it employs a tortfeasor." *Monell*, 436 U.S. at 691. Plaintiff alleges that "[w]hile committing the misconduct alleged [...], Defendants Howell, Lyons, Ragland, Pearlman, Murray, Warrick, Green, and Bass, were employees, members, and agents of the City of Memphis, acting at all relevant times within the scope of their employment." This is an insufficient basis to impose respondeat superior liability on a municipality like the City. *See Joyner*, 968 S.W.2d at 850; *see also Monell*, 436 U.S. at 691.

Second, the City is immune from any liability for the state law claims against the Defendant Officers. The Tennessee Governmental Tort Liability Act ("GTLA") contains a list of specific exceptions for which municipalities such as the City retain immunity. *See* Tenn. Code Ann. § 29-20 205(1)-(10). One is the "intentional tort exception," which bars claims for injuries arising out of "[f]alse imprisonment pursuant to a mittimus from a court, false arrest, malicious

prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights." Tenn. Code Ann. § 29-20-205(2) (emphasis added); *Limbaugh*, 59 S.W.3d at 81.

Plaintiff alleges that "Defendant City of Memphis is liable as principal for all ***state law torts*** committed by its agents." (Compl., ¶ 334) (emphasis added). The City is immune from liability for Plaintiff's state law claims against Defendant Officers. Specifically, Plaintiff's state law claims against Defendant Officers—intentional infliction of emotional distress, malicious prosecution, and civil conspiracy—specifically fall within the intentional tort exception to the GTLA. Plaintiff cannot circumvent the City's immunity by asserting respondeat superior. Accordingly, Count XII should be dismissed.

### F.   Plaintiff is not Entitled to State Law Indemnification from the City.

Plaintiff is not entitled to indemnification from the City. Notwithstanding the fact that Plaintiff does not articulate any reasonable basis for indemnification, this claim also fails because the allegations against the Defendant Officers sound in willful and intentional conduct. Plaintiff alleges "[i]n committing the acts alleged in the preceding paragraphs, each of the Defendant Officers were members of, and agents of, the Memphis Police Department, acting at all relevant times within the scope of their employment and under color of law." (Compl., ¶ 336.) In *City of Mason v. Banks*, the Supreme Court of Tennessee noted that the indemnification statute "contemplated indemnification for a policeman's or fireman's breach of a duty owed to an indemnitee arising out of his employment, except for conduct involving willful wrongdoing." 581 S.W.2d 621, 623–24. Specifically, the Supreme Court of Tennessee noted:

> The intent of s 6s 6-640 T.C.A. (was) that the governmental entity indemnify the employees enumerated therein by paying (and defending) any judgment for compensatory damages awarded against them for any negligence committed in the performance of their official duties.

Albeit the statute does not mention the word "negligence," it is clear from our construction of the statute in [*City of Memphis v. Roberts*, 528 S.W.2d 201 (Tenn. 1975)] that [the statute] contemplated indemnification for a policeman's or fireman's breach of a duty owed to an indemnitee arising out of his employment, ***except for conduct involving willful wrongdoing.***

*Id.* (cleaned up) (citations and quotations omitted) (emphasis added).

It is clear from the Complaint that Plaintiff is alleging that the Defendant Officers acted willfully and that they intentionally engaged in misconduct. (*See, e.g.*, Compl., ¶¶ 17, 271, 277); *see also City of Mason*, 581 S.W.2d at 624 ("If willful wrongdoing is made an issue by the pleadings, its nonexistence must be established or plaintiff cannot recover."). Thus, Plaintiff's indemnification claim fails as a matter of law.

## CONCLUSION

For these reasons, the City respectfully requests this Court to grant its Motion to Dismiss in its entirety.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**

*s/ Bruce McMullen*

Bruce McMullen (#18126)
Jennie Vee Silk (#35319)
Briana J. Butler (#40566)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
bmcmullen@bakerdonelson.com
jsilk@bakerdonelson.com
bbutler@bakerdonelson.com

*Attorneys for Defendant City of Memphis and Defendants Thomas Warrick, James Howell, and Robert Ragland*

## CERTIFICATE OF SERVICE

I, Bruce McMullen, hereby certify that on March 6, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, and that upon filing, such system will serve a copy of the foregoing upon all counsel of record in this action.

*s/ Bruce McMullen*
Bruce McMullen